THE STATE v. MAIRS AND MAIRS.

1. When there is a question whether a statute, upon which an indictment is grounded, extends to New Jersey, the court will not decide it on a motion to bail.

2. It is discretionary with the court to admit to bail in a case of *maihem*, but on an indictment for *maihem*, where it is erroneous, and no circumstances proved from which the innocence of the accused can be presumed, the court will not bail.

3. *Quere*—whether the Coventry act extends to New Jersey?

The defendants had been indicted at the last Monmouth Assizes for a malicious maim, on the Coventry act—assault, battery and wounding upon one William Wilds—on which they had been committed to gaol. In the vacation between April and May Terms, an application was made to the Chief Justice, at his chambers, for a *habeas corpus*, with a view to obtain a discharge upon bail. His Honor allowed the writ, but made it returnable to this term. The *habeas corpus* being returned, together with the cause of their detention, *Leake, Aa. Ogden* and *Forman*, for the prisoners, contended

2 B

that they were entitled to bail, notwithstanding that by the indictment they were charged with a capital felony.

1st. Because the Coventry act, upon which the indictment was founded, did not extend to this country. This act was passed (22d and 23d *Car. II.*,) in the year 1670. Two years before this time, the Province of New Jersey possessed within itself a regular legislative government, and of course ceased to be bound by the laws of the mother country. It appears, by Leaming & Spicer's collection of grants, concessions and original constitutions of New Jersey, &c., (*fol.* 77 ; see, also, same book, *fols.* 227, 423,) that the general assembly met May 30th, 1668, when Carteret was governor, and passed laws for the government of the [336] province. From that period, therefore, the acts of parliament ceased to have any binding force here. 2 *P. Wms.* 75 ; 1 *Bl. Com.* 101, 108-9.

Under ordinary circumstances, therefore, and with regard to the statutes of the British parliament, this court are bound to take notice that they are not applicable here. But it is a matter of notoriety that this statute was passed in consequence of an assault that had recently been made on Sir John Coventry, (4 *Bl. Com.* 207 ; see 1 *Hall's Amer. Law Journ.* 242, *nota,*) and was, therefore, more especially local in its origin and local in its extension.

2d. But if it be decided by the court that this statute extends to New Jersey, yet the court may, in their discretion, admit to bail even in cases of capital felony. 4 *Bl. Com.* 299. *Highmore on Bail* 152, cites *Co. Bail, c.* 5, and as this is before trial, when the prisoners are to be presumed innocent of the crime laid to their charge, when they are prepared to procure security in any reasonable sum, the court ought to admit them to bail.

*Woodruff* (attorney general) and *R. Stockton, contra,* contended that there would be an impropriety in deciding on a question of so much importance, as whether the Coventry act extended or did not extend to New Jersey in this summary and collateral manner. If there were any grounds presented

to the court to induce them to consider the doctrines advanced for the prisoners to be doubtful, they would not determine this point except after a solemn argument. It would, therefore, be a sufficient answer to this part of the case to show that there had been convictions on this act in New Jersey, and that since the Revolution. The counsel then cited the case of *The State* v. *Melony*, at the Oyer and Terminer in Burlington, where the defendant was tried and convicted under this statute, though the same objection was there taken. At the same Assizes one Felix Hammel was also tried and convicted as accessary to Melony. After citing these cases, they should decline entering further into the argument, unless desired so to do by the court.

[337] 2d. They did not deny that discretionary powers existed in the court, who could admit to bail or not as they pleased; but they contended that this power was never exercised unless the accused would lay before them some grounds from which the probability of innocence could be inferred; or some circumstances of peculiar hardship in their situation. Nothing of this kind had been even attempted in the present case, and they therefore presumed that it was not one in which the court would feel inclined to exercise these high and important powers and to liberate the prisoners.

*Leake* and *Forman* in reply. It is the right of the prisoners to be bailed, if the crime alleged in the indictment to have been committed, does not exist under our laws. It is therefore highly important for them that the question should be determined; for so far as regarded their present application, to leave the matter in doubt was tantamount to a decision against them. If the grand jury found an indictment upon a statute of Great Britain, of Pennsylvania, or Connecticut by which we are not bound, their finding is altogether nugatory, and the court can determine the question as well now as hereafter.

As to Melony's case, it is to be remarked that it was decided since the Revolution, but in order to show that it is con-

clusive it should have been before that event. By the 22d
article of the constitution of New Jersey, it is declared that
" the common law, and so much of the statute law of England
as have been heretofore practiced in this colony, shall remain
in force." Since that period no statute of Great Britain which
had not previously been adopted can be made to have a bind-
ing force here. Unless, therefore, the Coventry act can be
proved to have been practiced under previously to the Revo-
lution, it must be presumed that it was not, and the cases
that have been here referred to are of no authority.

The court in delivering their opinion expressed no opinion
upon the queston that had been raised with regard to the
extension of the statute, but gave several reasons which had
induced them to waive deciding that question upon a mo-
tion like the present. They were, however, of opinion that
[338] in a case of maihem it was discretionary with the court
whether to bail or not; that it must depend on the circum-
stances of each individual case whether they should exercise
that discretion or not, but that where the wounding is enor-
mous, and there is no pretence of innocence, it would be im-
proper to admit the prisoners to bail.

Prisoners remanded.

NOTE.—From the peculiar connection which formerly existed between
the colonies now constituting a large part of the United States with Great
Britain; from the circumstance that the common law of England was
adopted almost universally among us, and that many of the acts of parlia-
ment were recognized as part of our law, questions have frequently arisen,
and probably will continue to arise, how far these statutes have any obliga-
tory force among us. Different opinions have been entertained and ex-
pressed upon this subject by judges of equal ability and worth; but upon
a question of this kind, so completely anomalous in its nature, the grounds
for the decision of which are so scattered, obscure, and remote, we cannot
be surprised if political feelings have sometimes mingled in the considera-
tion and influenced the opinion that has been adopted. In the year 1782,
it was declared by McKean, Chief Justice of Pennsylvania, an able, in-
dependent and profound lawyer, that " all statutes made since the settle-
ment of Pennsylvania have no force there, unless the colonies are par-
ticularly named; and all statutes made before that settlement have no

force, unless convenient and adapted to the circumstances of the country." 1 *Dall.* 67, 74, 5.

In an old edition of *Blackstone's Commentaries,* in the possession of the editor, we find the following MS. note, which we have reason to believe authentic: "Chief Justice Kinsey, on the subject of the extension of the statutes of Great Britain in New Jersey, is of opinion that the statutes subsequent to the settlement of the colony do not extend. Chief Justice Brearly, (the immediate predecessor of Mr. Kinsey,) was to opinion that the statutes prior to the surrender of the government to Queen Anne, (*Leaming & Spicer's collection* 609,) which was the 15th of April, 1702, do extend."

From an abstract of a special verdict in the case of *Calvert's lessee* v. *Eden et al.,* it appears that in Maryland the rule that has been adopted is, that "all statutes antecedent to the settlement of the province, so far as suited the condition, situation and circumstances" of the inhabitants, were adopted. 2 *Harris and McHenry* 284. This would appear to exclude *all* statutes passed subsequent to the settlement, a construction which is negatived by an opinion of Hanson, J., in the case of *Moore's lessee* v. *Pearce,* 2 *Harris and M'Hen.* 241, where he says, " agreeably to the rules [339] which prevailed in our provincial court respecting the adoption of English statutes, I am satisfied that the 7 *Geo. II., c.* 20, makes a part of our law under the constitution." He does not, however, state what those rules are, nor do the reports of earlier decisions, in that state, enable us to ascertain them. The statute of 11 *Geo. II.,* relative to the payment of rent, extended also to Maryland. *Ib.* 290.

It would seem, from a comparison of these opinions, that the prevailing idea is, that the statutes of British parliament, as such, have no force with us; but so far as they have been practiced under, they have become a part of our common law, and are authority. Nor is this idea in any degree contradicted by a circumstance which must occur to every lawyer, upon reflection, viz., that in examining the particular English statutes, a very large proportion of them will be found to have been adopted, much larger indeed, than it can be supposed would have been sanctioned, had they been individually submitted to the choice of the people, or their representatives. It is to be recollected, however, that before the Revolution, it was customary for the gentlemen of the bar, and the judges, to receive their legal education in England, where they were instructed equally in the common and statute law, and insensibly introduced much of the latter into the provinces.

The idea that none of the British statutes have any other force in the United States than such as is derived from having been adopted by ourselves, is sanctioned by an ingenious publication of Judge Wilson, of the Supreme Court of the U. S., as early as the year 1774, (3 *Wils. Works* 203,) in which the same idea is very ably supported, and the whole question fully investigated.